Good morning. Please be seated. Good morning. Your Honor, the fourth case in the morning called Thomas, Special Administrator of the Estate of Jason Thomas v. Wheaton Trench Canyon on behalf of the Adelaide District of Indian World, Your Honor. On behalf of the Adelaide, it is an honor to be here. Are you ready to proceed? Yes. You may proceed when you're ready. Thank you. Are you pleased with Justices, Counsel? Jeff Como. It is our pleasure, Jeff Como is in line to represent the plaintiffs in this matter. And we appreciate the court allowing us an opportunity to appear before you this morning. The standard of review in this matter is a de novo review. We believe that the evidence overwhelmingly favored the verdict in favor of the plaintiff and ensured that the verdict should be set aside and a verdict should be entered in favor of the plaintiff and go back on a trial of damages only. If the court were to feel otherwise, our alternative relief at this request of the court this morning is that the evidence is at minimum against the manifest weight of the evidence, the verdict was at minimum against the manifest weight, and the verdict should be vacated and go back on a new trial on all issues. There are several reasons why we're here today. First, the court erred in not directing a verdict in favor of the plaintiff. All of the evidence in this case was that the defendant, Wheaton Trenching, and their operator, John Wheat, had a number of duties, all of which were violated. There were 20-some-odd acts of negligence in the jury instruction, all of which had overwhelming evidence that were violated or breached, all by admission of the defendant or the defendant's owner himself. There was evidence of duty, breach, that this particular pipe rolled out of control once the breach had occurred, causing Jason Thomas to be crushed and causing this incident to occur ultimately resulting in Mr. Thomas' death. What was the duty with reference to that fourth pipe and the breach with reference to that fourth pipe? There is a duty to handle the pipe appropriately. There is a duty to make himself, Mr. Wheat, the operator of that piece of equipment, aware of specifically where the plaintiff is at all times. That is admitted by Mr. Wheat and also admitted by his boss, Mr. Sabagnago. He breached both of those things. He mishandled the pipe. That's by his admission, Mr. Wheat, by Mr. Sabagnago's, by their hired expert, Gene Holland, all of which say that he breached that duty by mishandling the pipe. A number of ways that pipe could have been moved was a teacup method, which is simply picking it up, spear it like you might spear a paper towel roll, roll the pipe back. You could roll it all the way to China by his admission. Any one of those things could have been done, or you simply wait. Don't do the lift until the area is safe for a lift to occur. But he's done three lifts already, and as he testified, the two parties, Mr. Thomas and Mr. Johnson, were standing in the same spot. Okay, so he basically asked for credit for doing three things without being negligent. The fourth one, he was negligent, and he killed somebody, which is effectively what happened here. If I were to drive my car to the courthouse today without getting into an accident, but tomorrow I rear-end somebody, I'm still guilty of negligence when I rear-end the person tomorrow. I don't get credit for today not having an occurrence. The fact is that Mr. Wheat was entirely and exclusively in control of the operation of this piece of equipment and the pipe itself. The pipe never, ever moves unless and until Mr. Wheat effects a force upon it. And when he does that, he has to do that in a safe manner. He has to make himself aware that there is nobody in any area that can be hurt if, in fact, he does blow it, which by admission he did blow it on all these duties. And he has to exercise the proper manner, method, and execution of the lift. He admitted that his obligation, among others, was to be aware of where all people are in the site, including specifically Mr. Thomas, before, during, and after the lift. This is his admission of the duty, not ours. The mishandling of the pipe was admitted on several different occasions by several different people, and I would just like to highlight a few if I may. The testimony of Mr. Wheat, in part, is a question. The only thing that you have to do is complete this lift safely. Answer, yes. You didn't do that. No, I didn't. It is your understanding that you did not control the pipes. Is that true? True. It's your understanding that the only reason the pipe moved was that you mishandled it, and it started moving in the direction of Mr. Thomas. Is that true? That's true. If you did it, if you did it properly, you would have lifted it up, you never would have crushed Jason, it never would have rolled towards Jason. Answer, yes. The fact is that he was up, he being Jason, was already between the truck and the pipe when you saw him, and the truck was, and the pipe was rolling. The pipe was rolling, correct. He wasn't getting, going to get up, get away, because you told me he, being Jason, had no chance, right? Correct. So he's not stepping into any zone. He's there, and you send the pipe at him. Answer, correct. And that's the zone that you're supposed to, you being Mr. Weath, supposed to keep in mind that wherever the pipe can go, if you lose control of it, you should not do that lift. Isn't that correct? Sure. Mr. Savignongo, who's the owner of Wheaton Trench, and who was the last witness in the case, who sat through the entire trial, listen to all the witnesses. He's the last guy up there. His questions and answers are, it's the obligation of the operator, Mr. Weath, to maintain control of that pipe at all times during his handling of the pipe. Is that correct? Yes. In theory, yes. Excuse me. He failed to do that. Isn't that correct, sir? Answer, he didn't control it. Yes. Is it your understanding, sir, that Mr. Weath's hitting the pipe was the reason the pipe rolled at Mr. Thomas? Answer, yes. The mishandling of the pipe, entirely Mr. Weath's doing. Is that correct? Yes. Hitting the pipe when he shouldn't have entirely Mr. Weath's doing. Is that right? Yes. Where Jason Thomas was at the time that Mr. Weath is going to attempt to move this pipe is a condition, a condition that Mr. Weath has to make himself aware of when he's considering whether he can do a lift safely. True? Answer, true. Now, let's assume that Mr. Weath doesn't fulfill that obligation to look up and see where Mr. Thomas is before he hits the pipe. If Mr. Weath's separate and apart from that, simply does the lift correctly, Jason Thomas still goes home to his family, right? Yes. Is it your understanding, sir, that Mr. Weath hitting the pipe was the reason the pipe rolled at Mr. Thomas? Yes. Without Mr. Weath mishandling the load and causing it to roll towards Mr. Thomas, Mr. Thomas would not have been crushed or died as a result of this occurrence. Is that right? Answer, yes. The mishandling of the pipe entirely Weath's doing. Is that right? Right. Mr. Stark, who is an owner of a separate company who had a truck out on the site, said, as you understand this case, how would you describe the operator Mr. Weath's attempt to pick up the fourth pipe? In a word, careless. Did Mr. Weath lose control of the load? He lost control of the pipe. That's correct. Did Mr. Weath mishandle the pipe? He did. Oh, I'm sorry. I jumped ahead just a second. Mr. Holland, in the last quote, Mr. Holland is the retained expert of Wheaton, who is the defendant in this case, and he testified as follows very briefly. Did Mr. Weath lose control of the load? Answer, he lost control of the pipe. That's correct. Did Mr. Weath mishandle the pipe? Answer, he did. And it's your understanding that as a result of mishandling that pipe, the pipe rolling in that fashion towards Jason Thomas, that ultimately Jason Thomas died. Answer, I believe that he did die because the pipe hit him. In a nutshell, every which way the defendant could have done it. What did the judge say when he denied your motion for a directed finding of the plaintiff's case in the course of all the evidence? Not much, to be honest with you, sir. Not much. Initially the case was not over yet. He was going to wait it out and see what happened with the defense's case. The defense brought forth no evidence that unwound anything that was done whatsoever. We again addressed the issue of a directed finding. It was denied. The defense argued that there were not evidence of various things. However, as you see in the jury instructions, the judge found during that session and ultimately in the instruction itself, there were evidence of each and every allegation of negligence. And I would suggest undisputed evidence. That was the issue. There was nothing that said I didn't have a duty to do this or I fulfilled my duty to do this. It was simply I had a duty and I breached it. Who prepared the instructions? Who prepared them? Who prepared and attended them? I believe the one that was entered in terms of there were various instructions from both parties. The issues instruction. The verdict forms. The verdict forms ultimately after they were ruled upon by the judge. We were trying the case in Kendall County. Our offices were in Chicago. We ultimately typed what the judge had ruled upon to tender to him as the jury instructions. So I believe the plaintiff, if I'm not mistaken, had tendered all of the verdict form instructions. But only after we had been told on multiple occasions that our directed finding that we had requested was flat out denied. So it is our belief that clearly there should have been a verdict in favor of the plaintiff. In addition to the breach of the duty causing the incident itself, Mr. Scherchl got to argue entirely improperly in his closing argument on a number of issues. He argued that Mr. Thomas had to have known that this pipe would be coming. First of all, Mr. Weiss said he had no chance. Mr. Weiss said he didn't fulfill his duty to know where Jason Thomas was. He hit the pipe. He sent the pipe at him and looked up immediately. And Jason Thomas, there was no way he was going to get away. In his words, he had no chance. One more step and he was cleared. Simply, Mr. Weiss just sat there for another second, let him take another step and then perform the lift. If he did it safely, again, the man goes home to his family. Even if he was negligent in sending the pipe, he still goes home to his family. Wasn't there somewhat of a dispute about exactly where Mr. Thomas was at the time the pipe started to move? No. And the only witness was the other truck driver? The evidence was that he was once, if I were to use an analogy, if your bench is the back of the truck and this podium is the piece of equipment that is moving the pipe, he was one step away from the end of the back of the truck. So he was one step away from going home, essentially. That's the only evidence that was testified to as to where he was at the time. And it was one to two seconds from Mr. Weiss colliding with the pipe, in other words, mishandling it, and the collision between the pipe crushing Jason into the truck, hitting him so hard that the pipe rebounded off him. The argument that Mr. Scherchl made was in direct violation of a motion in limine and an order in limine because the only evidence in this case was that Jason Thomas was not a guy who operated these pieces of equipment, not a guy that handled pipes. He's a guy that's out there because somebody else's truck got stuck in the mud. He's got no training. He's got no education. He's got no instruction whatsoever about the handling or mishandling of pipes. There is nothing that suggests that Mr. Thomas knew of anything about the handling of these pipes, that he shouldn't do something one way or the other. His entire life experience was that day. The guy lifted three pipes properly, and then he blew the last one and killed him. That's it. He's got no reason to know anything. In fact, the first three that were lifted, there was no incident. There's nothing. It's simply that it was mishandling on the fourth one by Mr. Weiss. Let's hear some testimony, approximately eight foot from the time that the operator of the cab last saw the plaintiff and the other partner. He said about five seconds before he saw him over here. And then in violation of his duty, he did not continue. I'm talking about the number of feet. Yes, sir. And what was the number of feet? I believe, I'm sure that the record is probably more accurate than I am, Your Honor, but I don't disagree with your analogy that it's about eight feet or so. I don't remember exactly, but I'm sure I remember an eight foot. I think the back of the truck was, give or take, eight feet wide anyway. But he's from the right side of the truck. We've seized him at one point in time. Although he has a duty to make sure that he's aware of Mr. Thomas at all times, he violates that duty right off the bat, doesn't check again before he does the lift, which, again, is in violation of his duty to know where he is before he performs the lift. And then when he hits the load and sends it at him, our guy has absolutely no chance. And there's no revving up of the machine or anything like that because Mr. Loren Johnson says that didn't happen. There's no reason for Jason Thomas to be warned of anything. This is simply a mishandling of the pipe. Does Mr. Wheat say how he hit the pipe? Yes. Or why he hit the pipe? He says he believes he was going under it, and instead he bumped the pipe. Is it because he was looking to see where Mr. Johnson and Mr. Thomas were? Absolutely not. He didn't mention that. His focus has got to be on the bottom of the pipe. I know where his focus should be, but he's also supposed to know where they are all the time. So how many eyes does he have? I would suggest to you that if he was looking for Mr. Thomas when he was asked about a million different questions, he would have said, I was looking for Mr. Thomas at the time. And if, in fact, he was, he wouldn't have done the lift because he would know if I'm going to blow this lift, I can kill somebody because he's standing right in front of the truck. Is he supposed to be watching the pipe or your client? One of the things that we suggested as a method, and asked the question flat out, if you need some help, you get a spotter. Absolutely. I'm the operator. I'm in exclusive control. If I don't think I can perform something safely, I get a spotter. That way you can have a third party, like they do on a lot of construction sites, to make sure that there is nobody in an area and allows an operator to exclusively focus on one topic. However, he didn't ask for a spotter. He didn't warn anybody. He didn't honk a horn. He didn't tell the guys, hey, stay over here because I'm going to do a lift. All of those things were in his control to do. All of them were part of what an operator does, and none of them were fulfilled. He simply came in hard, hit the pipe, hit it above an area that would scoop it because basically, Your Honor, he said he would get under it and he would roll it back. It would kind of backspin into the cradle. And as he did that, he hit it high and he launched the pipe at Jason Thomas, and that's how this happened. Now, Mr. Scherchl was able to argue. You'll have an opportunity for reply. Fair enough. Thank you very much. Thank you. Thank you. Good morning. Ellen Green for the defendant, Abilene Wheaton Trenching. May it please the court. In this case, there was a general verdict that was entered in favor of the defendant, and we don't know if the jury found that the plaintiff failed to satisfy her burden of proof or if the jury based its verdict on the extent of Thomas' comparative negligence. But either way, there was evidence at trial to support the jury's verdict. The issue of the defendant's negligence was clearly one for the jury to decide. But the defendant, well, Mr. Weeds, if I've looked at the record correctly, admits that if it were not for the fact that he hit that pipe, Mr. Thomas would be alive. What more does he have to say? I propelled it at him on purpose? By Mr. Weeds, he's an employee of Wheaton Trenching, testifying that he mishandled the pipe as he was moving it or that if he had done it properly that Mr. Thomas would have been able to go home to his family. That only relates to cause in fact. And no one here disputes that had Mr. Weeds not struck that pipe and put it into motion that this accident wouldn't have occurred. But just having a cause in fact and setting things into motion is not enough to direct a verdict against a defendant. You also need for the defendant to establish the negligence as a breach of the duty of care and proximate cause, which has two elements, cause in fact, which no one is disputing in this case, but also legal cause, which relates to foreseeability. So just the fact that he agrees he mishandled the pipe and it just happens that a horrible accident occurred in one of Wheaton Trench's defenses is that it's due to Mr. Thomas's comparative negligence in walking into an area that was approximately 8 to 10 feet in width between the back of the truck and a concrete pipe that weighs about 13,000 pounds. Was the motion at the close of the plaintiff's case a motion for directed finding that the defendant was negligent? No, it was a motion for a directed verdict. It was, I think, the third one they brought, they brought a motion after two of their witnesses testified in their case in chief and the trial court denied that, and then they also renewed their motion at the close of their case of defendants. I'm sorry, it was three times I have it. At the close, after two witnesses testified at the close of their case in chief and also at the close after the defendant presented its evidence. And it wasn't a motion for a directed finding, but just a motion for a directed verdict. They also made a motion for judgment notwithstanding the verdict after the trial court returned a verdict in favor of the defendant, and that was also denied. And while we're mentioning these motions, the plaintiff improperly states what the standard of review is. It's not to know, though. I think with respect to the motion for a new trial, it's abuse of discretion. And with respect to the jury. Is it your position at this point in time that the defendant was not negligent? Yes or no? That is what the jury found, and there is evidence. Okay. We don't dispute that, you know, he mishandled the pipe. You have a legal position with respect to your argument. Is your position that the defendant was not negligent? Yes, that's our position. And it's ultimately a question for the jury to decide. And here we had a choice. Yes. The jury, you know, heard evidence that plaintiffs didn't mention that relates to the breach of the duty of care. Defendant's expert, Eugene Holland, he testified that we've exercised good practice in making sure drivers were out of harm's way before he started moving the fourth pipe. He did see Mr. Thomas standing with another driver, Mr. Johnson, to the passenger side of the truck just seconds before he started to attempt moving the pipe. He testified that the procedure that we've used to move the pipe with the fork of that particular length was standard in the industry. He also testified that we didn't need a spotter under these circumstances because it was not what he called a blind lift where you couldn't see where you were going to put the pipe either before or after the lift. And just this evidence would support an inference that we did not breach a duty owed to Thomas to move the fourth pipe. With respect to causation, as I mentioned before, there is both cause and effect and legal cause. The plain way that he improperly lifted the pipe, totally improperly lifted the pipe, either lift the pipe or you get it. I think he did. My understanding of the testimony that was in his trial, but just from a reading of the record, is that he sort of bumped it and that maybe didn't get the bucket of his end loader under the pipe sufficiently to move it. Was that a proper way to do it? A reasonably proper way to do it. I think he admit that he mishandled it, but it doesn't mean that. What does that mean? He admits that he improperly mishandled it. I can't speak for Mr. Green. It's a failure to act as a reasonable person, whether under the same or similar circumstances. And to me, that's like saying I improperly, I was negligent in the way I lifted. And by negligence, I don't mean the work. I'm not including proximate cause. But it also suggests a concept that he has a duty of care to, which he doesn't have, to the pipe. If there had been nobody around and he mishandled the pipe by moving it improperly, we wouldn't be here. You have a duty of care to people. And the question is, did he breach his duty of care to Mr. Thomas? When, you know, there's a question, and this was for the jury to decide, whether it was foreseeable to miss somebody in Mr. Wheat's position, that a grown man, the truck driver, Mr. Thomas, would walk near a giant concrete pipe when, after he had just moved three of the four pipes, his engine is running. It's a small space, only between eight and ten feet, so he's coming very close to the pipe. Now you're talking about contributory negligence. It also relates to foreseeability. He has seen, there's a span of five seconds between the time that he saw Mr. Thomas and Mr. Johnson standing on the side of the truck and before the time he's attempted to move the pipe. It's similar to, you know, somebody hitting a pedestrian who crosses mid-block. You know, do you have to anticipate that somebody would not be so concerned with their own safety that they would walk into a street? And here, it was reasonable for the jury to determine that a reasonable person would not take this route for any reason, but that was for them to decide. And we can't just substitute whatever plaintiff's version of the fact. You're talking about foreseeability? In other words, from the standpoint of the operator of the pipe foreseeing that somebody's going to commit suicide by walking? Well, that somebody would choose to walk so closely to his pipe. He did stop and check to see that Mr. Thomas was standing on the side of the vehicle. He had just moved three pipes with no problem. And was it reasonable? And then he didn't give any other warning to the people that were standing there that he was going to start this silent machine. It wasn't silent. He testified maybe it didn't rev, like making a rev sound, but Mr. Johnson, who was standing with Mr. Thomas, testified that he heard the machine. And he, you know, was waiting for the fourth pipe to move. He looked away. He was looking out in the field. And the next thing he knows, he turned and, you know, realized that Mr. Thomas was not standing next to him. But all these facts were heard by a jury. They had to know that. Right. And that was really a determination for them to decide that there's no evidence in the record to support their conclusion or that it was totally arbitrary or unreasonable. But under these circumstances, the trial court was correct in not taking those issues from the jury but allowing them to decide them and then allowing that verdict and judgment to stand. Now, Mr. Thomas can't tell us why he took to movement. No, he can't. He can't tell us why his gloves were moved or he went after his gloves or whatever. But doesn't Mr. Weiss, in addition to looking at people, I mean, isn't he supposed to be in command of the area to make sure that there's nothing or no one in his line of... But he did testify that he looked up, and I guess that's how you're going to define the area. It is a pretty small space, and he looked, and there's only testimony. That was a matter of, I have that it's five seconds that he testified between, it was only five seconds passed between the time he saw Thomas and Johnson and the time he attempted to lift the fourth pipe. And the question is, you know, was it reasonable for him to assume that Mr. Thomas would not begin to walk in between the back of a truck and a 13,000-pound pipe that's about to be moved? Do we have any idea where Mr. Thomas' truck is with his pipes? I'm not, it was somewhere. I mean, is it in the record? It's in the record. Don't we know if he's going toward his truck? No. It would be speculation to guess whether he was walking toward his truck or not. He was talking with the other truck driver. That truck had got stuck in the mud, so the three of them wanted to take the pipes off the truck, and then they had to move them out of the way, and then they wanted to pull the truck out in the same direction in which it had gone into this ditch, and that's why the three of them were still on the scene and trying to correct the situation. You started out by saying we're not sure if the jury found the defendant not negligent or found that Mr. Thomas was contributorily or comparatively negligent. Correct. Because it was a general verdict. Correct. Wouldn't it be better, and this would go to your arguments during jury instruction conference, to be specific and give the jury specific instructions because this is a rather complicated case? We could always look back and say this wasn't an issue that was raised or developed by a plaintiff in his post-trial motion or in his brief. I don't think there was even a mention of the verdict forms in the post-trial motion, just in a very conclusory way. This was addressed in the brief. Well, because he had been arguing that there should have been a directed verdict on negligence. And a new trial with a judgment notwithstanding the verdict, if he had an issue as to any improper jury instructions, you know, we would have addressed that. He stated that instructions were given. This is not really discussed as an alleged error. Go ahead. And we're not here to second-guess. Do you agree with the plaintiff's argument that the judge directed the form of the verdicts? It's always up to the judge to decide what. I know. Listen to my question. Do you agree with the plaintiff's argument that the judge directed the form of the verdicts? Not in comparison, not in general. Because in an argument, as I understand this argument, the judge directed the verdict forms to be made in a certain way that they call their office downtown and the verdicts are prepared as the judge ordered. To be honest with you, I do not recall from my review of the record that instruction conference is in the record. This is the first I'm hearing about it at the oral argument on the appeal. It wasn't in the post-trial motion or argued in his brief. So I'm not really in a position to address if they felt compelled by the judge to adopt those instructions. I wouldn't think that those instructions are erroneous, given that there is evidence in the record to support both finding that there isn't a breach of the duty of care, no proximate cause, because it was not foreseeable that Thomas would walk in this dangerous, put himself in this dangerous position, and also that same action of him moving very close to this pipe while it was being moved also would support preventive negligence. I'm trying to properly keep an eye out on people that were in the vicinity. I'm sorry. I heard the beeping. I said, Ann, the failure of your client to continuously keep his eye on people who are in the area of danger while he's performing a dangerous act. That would be something for a jury to decide whether he needed to keep a continuous eye while he's operating the machinery. Did he act reasonably in checking the area, seeing that the plaintiff was in a safe position before he began his operation? Jurors decide fact questions, and when there are no fact questions, the judge makes the decision relative to a fact and directs the jury relative to that fact. I think he had a duty of reasonable care to people in the area. I don't know that he had to keep constant visual contact with them as he's operating the machinery, but whether he breached that duty of care, again, was for the jury. So that was one of his allegations in the complaint relative to active negligence, that he failed to continuously observe the position of the plaintiff while he was performing a very dangerous act. That's an allegation the jury can decide whether that constitutes a breach of the duty of care. But if there are no further questions, we would ask the court to affirm the verdict in judgment. Thank you very much. Do you wish to offer a reply? Thank you. As far as this cause and fact argument, Weath didn't hit this pipe and send it gently rolling down the road, and then farther down the road some guy decided to drive his car in front of the pipe and wait for it to hit him. This is not the case at all. This is an immediate thing. Mr. Weath hit this pipe in an area where the plaintiff is already behind the back of that truck. By his own admission, the truck is a width, and the plaintiff has crossed the back of the truck, and he's only one step away from being past the other end of it. Can I ask a couple questions? Yes, sir, of course. You only made a verdict for a plaintiff's case for a directed verdict. Is that correct? In hopes that he would grant the directed verdict, and if not, he would certainly grant in part that the duty and the breach occurred, because there was no question on any of four of those issues, duty, breach, causation, or injury at that time. He could have given us all of them, which he should have, or he could have simply said duty and breach, and then the jury is now left confused where someone can say this is really an issue to discuss. As Your Honor mentioned, there's only a question of fact that goes to the jury. If the jury doesn't have a question of fact, if there's an allegation and an admission, that's the judge's job to step in and say, okay, that's out of the case now. There's a duty and there's a breach. If he didn't feel that there was causation for some reason or felt that he wanted to allow this causation in fact versus causation in law argument, which I believe is wrong, he could certainly have done that. It still would have been wrong, but we would have at least. My question is, let me ask it more correctly. Yes, sir. Is there a difference in making a motion for a directed finding that the defendant was negligent, failed to act as a reasonable person versus a motion for a directed verdict, which includes proximate cause? I think the motion for a directed verdict is probably more inclusive than the negligent, but as I learned negligence in law school, it was duty, breach, causation, and damages. So I think it's all four. I've heard different defendants at times say, hey, wait a minute, we might have done something wrong, but we didn't really cause the injury. But really that argument is typically only made when there's a doctor who says, I'm sorry, the guy had a preexisting chondromalacia condition, and this was really the cause of his need for knee surgery, not so much the occurrence or maybe a percentage of the occurrence. That might be a more proper argument when you're talking about causation. This is very simple. He didn't handle the pipe in any one of the 20 different ways he was supposed to. He violated all of those duties. As a result, he sends the pipe where two seconds later it crushes a man. He's on the site. He's calling out, please call my wife, don't let me die, and later he dies. There is no question he died as a result of this by the admission of everybody in the case, the operator, the owner, the other guy's owner, the hired expert from the defendant. Everybody knows he dies as a result of this. I don't even understand how they can argue this is a cause in fact but not a cause. The admission by the owner of Wheaton Trenchant that the position of Jason Thomas at all times is a condition, it's not a cause, it's a condition, and it's a condition that lights up the duty again of the operator to say, let me observe the conditions before I even attempt to lift this pipe. And if I don't feel that it's safe, all I have to do is ask for a spotter and say, hey, fellas, please could you step aside or honk the horn or do something. He did nothing. Not one thing did he exercise any care whatsoever in handling this pipe, and in his words, he blew it. By admission, I blew it. So I think the issue here was that the trial court allowed the jury to get a series of instructions and an attorney to get out there and start arguing things that were no longer in contest. And then he allowed a, I should say, the defense attorney got up and mentioned to the jury, which is totally outrageous, the number of houses. I understand that. If you got the judge to instruct the jury that as a matter of law the operator reached a duty of care, that the verdict form would have been entirely different. Absolutely. You wouldn't be confronted with the verdict form you have now. I think that is true. I think that is true. And Mr. Scherchl didn't even have a verdict form. He was typing it at the desk of the secretary in the courthouse to put in a verdict form C because we didn't even offer one because there is no verdict form C in our opinion. By denying a motion for a directed verdict by inclusion, does that mean that the judge had to deny a breach of the duty of care? I'm sorry, Your Honor, I didn't quite. By the motion for a directed verdict. Yes, sir. The directed verdict would include proximate cause. Do you agree with that? Yes, sir. It would be a finding. There is a breach of the duty, proximate cause. Yes, sir. And there were damages and the damages would be further issued to the jury. Yes, sir. But once you got the verdict, the only thing left would be damages. That's correct. And I take it the other party argued strongly on proximate cause and contributory negligence. Well, first of all, they tried to, but there is no evidence of contributory negligence because there is no evidence that Jason Thomas had any training whatsoever or knowledge of anything that could happen to him out there that day. Motion to eliminate number 21 was granted. There was an order to eliminate. There was going to be no discussion of anything like that. Mr. Scherchl violated that in closing argument, saying he had to have known, and that is absolutely an improper argument given that order. Did you object to that argument? Of course. Yes, sir. And also, Mr. Scherchl tried to argue this cause in fact versus legal cause. The jury doesn't understand that stuff. They don't understand cause in fact versus legal cause. The only cause that was even in the room is this man violated 20 different ways his duty and launched a pipe at a guy who was doing his job, simply helping him out because someone got their truck stuck in the mud because the nitwit doing the lift to begin with brought him out in the middle of a mud field to drop off these pipes. So our guy is there to help out, and he hits the pipe without properly making himself apprised of where everybody is, and he kills the gentleman flat out on the site. That's all there is to it. He admitted everything under the sun except the lawyer got to go to the jury and argue as if none of that ever happened. There was no admissions of anything. As far as the jury knew, they get an allegation, they get the evidence. And more than that, the defendant got any instructions to deny that they did any of those different 20-something odd things when in fact the parties admitted it. That is improper. The judge should step in. If the party admits it, it's admitted. He heard it. He's got to step in with his powers as a judge to exercise. I'm sorry, the question was asked. You answered it. You admitted it. It's over. You don't get to confuse 12 people by saying this is still up in the air, guys, to decide this. That's just not proper. And I think this is a very serious case. We have a widow and two children. This is not a rear-ender with a – Why don't you say that? And I apologize. But this is a case that I believe deserved all the attention to the law that it could have. And the attention to the law, if it was given, I believe, was there was, in fact, many different breaches. And we only had to prove one, as you all know. We only had to prove one duty, one breach that led to this incident. We proved 20 different things by their own admission. This is not something where we had a coworker come in and say, I complained to the guy, and that's how there may be evidence of the duty. This is a flat-out admission by the party themselves. So it's an admission against interest. And I think that the judge erred in not allowing the directed verdict motion on several different occasions. He certainly erred, at least, in not granting it in part, at a minimum. The evidence was so overwhelming. There should be a verdict in favor of the plaintiff, and it should go back on damages only. If you feel otherwise, I would suggest to you that the verdict is definitely against the manifest weight of the evidence, and we should go back on a trial on all issues. Counsel, would you agree that the court, in deciding a motion for a directed verdict, has to conclude that the evidence is so overwhelmingly favorable to the plaintiff that no contrary verdict could ever stand? I believe that's the standard, and I believe that we met that standard in NSOP. I believe they had a duty. They admitted. They had a breach. They admitted. They had causation. That's the standard. That's what the court would have had to found. I believe that that's the issue. However, the court could have made a directed finding on an issue of duty and breach. It could have made a directed finding on causation. But you never made a motion for directed finding. You made a motion for directed verdict. Is that correct? I would rely on the record to be more specific about that, Your Honor. We may have done both, but in making the motion for a directed verdict, we discussed each of the elements throughout the course of each of those motions, which included the duty, breach, causation, and damages. Any judge could have granted in part – But did you ask for alternative? I'm just asking. Did you ask for alternative? My memory is not – My memory says we did. Again, I would rely on the record. But we tried every which way to Sunday to get this out of the case because it was so obvious in the room that they admitted everything I asked. That was it. So I don't understand how we didn't get it, and I certainly don't understand how somebody is allowed to argue and put denials in front of the jury for things that were admitted by parties. That's just – that's begging for confusion for the jury. And they don't need that. That's why we do it in front of a judge instead of just us and the jury in the room. He's supposed to be the ref, and he should have stepped in at that point and said, I'm sorry you admitted these things. That's out of the case. If there's no other questions, thank you very much for your time. I appreciate you allowing us to appear today. Thank you. Now we're adjourned.